UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

DAYMON D. TATE,

                    Petitioner,

          v.                                    Case No. 04-C-1019

THOMAS BORGEN, Warden,

                    Respondent.

_____

ORDER

Petitioner Daymon Tate, proceeding *pro se*, filed an application for the writ of *habeas corpus* with this court in the form of a petition as required by Rule 2(a) of the Rules Governing Section 2254 Cases. Tate is currently confined at the Fox Lake Correctional Institution in Fox Lake, Wisconsin, and he is in custody pursuant to the judgment of conviction entered June 12, 1996, by the Circuit Court for Milwaukee County, Wisconsin, for armed robbery–concealing identity–and party to a crime. Tate was sentenced to 30 years in prison for these crimes. For the reasons that follow, the court will deny the petition.

FACTUAL BACKGROUND

On February 12, 1996, four armed and masked men robbed an automotive garage in Milwaukee, Wisconsin, and shot a man to death. On February 14,

1996, Tate's home was searched by Milwaukee police officers, and a mask and coat were found therein which matched the description of the clothes worn by the robbers. On February 29, 1996, Tate was charged with felony murder, armed robbery–concealing identity, and party to a crime.

On April 5, 1996, Tate pleaded guilty to the lesser charge of armed robbery–concealing identity–as a party to a crime. The terms of Tate's plea bargain were expressed in a letter from the prosecution to Tate's trial counsel. The letter stated the prosecution would reduce the charges against Tate in exchange for Tate's guilty plea and trial testimony against other robbery suspects. The letter also set forth the prosecution's position concerning any sentencing recommendation: "As previously noted, the actual State's recommendation has not yet been negotiated, nor am I committed to any particular position. I am willing to discuss this part of the agreement as time allows or after the trial on April 22, 1996."

Prior to accepting Tate's guilty plea, the trial court asked the prosecution whether it had made any promises regarding a sentencing recommendation, and the prosecution responded, "I believe the last paragraph refers to the fact that I have not foreclosed negotiation on that point . . . I have not made any agreements other than to agree to discuss it." The trial court confirmed with Tate's defense

Case 2:04-cv-01019-JPS   Filed 07/26/05   Page 2 of 30   Document 27

counsel that Tate was "not relying on any particular recommendation of sentencing or lack of one."

In May 1996, two of the robbery suspects were placed on trial, and during the trial, the mask and coat recovered from Tate's home were introduced as evidence. Tate testified as to his involvement in the crime, and he admitted that prior to confessing, he attempted to convince the police he was not involved.

Prior to Tate's sentencing, the prosecution sent Tate's trial counsel a letter explaining it would not make a sentencing recommendation because the prosecution felt it could not make a sentencing recommendation favorable to Tate due to the acquittal of one of the robbery suspects. The letter invited Tate's attorney to respond to the foregoing. Tate's attorney did not respond, and no sentencing recommendation was made.

On May 16, 1997, Tate filed a postconviction motion seeking to withdraw his guilty plea. In support of his motion, Tate alleged, among other things, his plea was not knowing, voluntary, and intelligently entered and that he received ineffective assistance from his trial counsel. In October 1997, the trial court held an evidentiary hearing. At the hearing, Tate testified he accepted the plea bargain and pleaded guilty only because his trial counsel (1) promised him the judge and the State had agreed he would be sentenced to probation, (2) told him he should disregard the portion of the guilty plea questionnaire that informed him the court

was not bound by any plea bargain, (3) told him his family would be relocated through a witness protection program, and (4) told him if he did not plead guilty, the prosecution would seek a 65-year sentence. Tate's trial counsel also testified at the hearing, and he denied making any of the foregoing representations. Tate's trial counsel testified he reviewed with Tate the guilty plea questionnaire and waiver of rights form, including the provision that set forth the maximum possible penalties and the provision that stated the judge was not bound to follow any plea bargain or any offered sentencing recommendation. On October 22, 1997, the trial court concluded Tate's trial counsel was more credible, and accordingly, it denied Tate's post-conviction motion.

In January 1998, Tate appealed his judgment of conviction, sentence, and the denial of his post-conviction motion, and on February 9, 1999, the Wisconsin Court of Appeals affirmed on all grounds. First, the court addressed Tate's claim that he was entitled to withdraw his guilty plea because it was not knowingly, voluntarily, and intelligently entered. The court set forth the law governing this claim:

> After sentencing, a plea may be withdrawn only if doing so is necessary to correct a manifest injustice. A defendant has the burden of proving by clear and convincing evidence that a manifest injustice has occurred. A manifest injustice occurs when a plea is not entered knowingly and voluntarily.
> . . . .
> . . . .

The issue of whether a plea was knowingly and voluntarily entered is a question of constitutional fact, subject to *de novo* review. The trial court's findings of historical or evidentiary facts, however, will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence.

(Ex. D, at 4 (citations and quotations omitted)). Against this backdrop, the court concluded Tate's guilty plea was knowingly, voluntarily, and intelligently entered. (Ex. D, at 5.)

Second, the Wisconsin Court of Appeals addressed Tate's claim that he was entitled to withdraw his guilty plea because the state breached the plea bargain by not making a sentencing recommendation at his sentencing hearing. The court set forth the law governing this claim:

When a defendant pleads guilty pursuant to a plea bargain, due process mandates that the bargain be enforced. The plea bargain may be vacated if the State materially and substantially breaches the plea bargain, because a material and substantial breach amounts to a manifest injustice. 'Such a breach must deprive the defendant of a material and substantial benefit for which he or she bargained.

'When a prosecutor does not make the negotiated sentencing recommendation that conduct constitutes a breach of the plea agreement. If the prosecutor's failure to make the negotiated sentencing recommendation materially and substantially breaches the plea bargain, the defendant is entitled to a new sentencing hearing in accordance with the terms of the plea bargain.

(Ex. D, at 6 (citations and quotations omitted)). The court concluded Tate failed to show the agreement was breached:

-5-

We conclude that the State did not materially and substantially breach the plea bargain. As reflected in the letter presented to the trial court, and confirmed by the parties at the guilty plea hearing, the plea bargain did not include any provision with respect to a sentencing recommendation. The State explicitly expressed that the parties had not negotiated regarding a sentencing recommendation. Although the State agreed to discuss a sentencing recommendation at a later date, that bargain did not require the State to offer a sentencing recommendation. We further conclude that the State did not materially and substantially breach the plea bargain by not discussing a potential recommendation with the defense. The State informed the defense of its intended position, and invited the defense to respond. This satisfied any obligation that the State may arguably have had.

(Ex. D, at 7.)

Third, the Wisconsin Court of Appeals considered Tate's claim that he was entitled to withdraw his guilty plea because he received ineffective assistance of counsel. The court set forth the law governing this claim:

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden to establish both that counsel's performance was deficient and that the deficient performance produced prejudice. To show prejudice, Tate must demonstrate that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.

(Ex. D, at 8 (citations and quotations omitted)). Against this backdrop, the court concluded Tate's trial counsel was not constitutionally ineffective:

As noted, Tate's attorney testified he did not make any of the alleged misrepresentations to Tate, and that he reviewed the plea questionnaire with Tate. The trial court made a credibility

-6-

determination and accepted that testimony, and we must defer to the trial court's credibility determination. We have also concluded that the State did not breach the plea bargain. Therefore, the only remaining ground for Tate's ineffective assistance of counsel claim is that his attorney failed to negotiate with the State regarding a sentencing recommendation. We conclude that Tate's attorney was not ineffective in that respect. As noted, the State was not bound to make any specific sentencing recommendation, and the attorney for the State felt that he would not be able to make a recommendation favorable to Tate. Tate's attorney, therefore, reasonably acquiesced in the State's position not to offer any sentencing recommendation. Further, Tate does not show how he was prejudiced by his attorney's decision not to negotiate a specific sentencing recommendation.

(Ex. D, at 9 (citations and quotations omitted)).

After receiving this unfavorable decision from the Wisconsin Court of Appeals, Tate's post-conviction counsel, Bernard Goldstein, filed a no-merit petition for review in the Wisconsin Supreme Court pursuant to Wis. Stat. § 809.32(4). On March 10, 1999, the Wisconsin Supreme Court responded by granting Tate until May 3, 1999, to file a supplemental petition; otherwise, the Court informed Tate his petition for review would be decided on the basis of the no-merit petition. On March 17, 1999, Tate filed a supplemental petition for review, and he presented two issues to the Court:

> 1. Should the defendant have been allowed to withdraw his plea due to ineffective counsel and the courts [*sic*] failure to take the plea as required?

2. Did the trial court abuse it's [*sic*] discretion by not applying the "Fair and just Reason" test to the motion to withdraw the plea even though the motion was filed after sentencing due to ineffective assistance of trial counsel?

(Ex. E.) A review of the supplemental petition reveals Tate did not present the Court with the issue of whether he was entitled to withdraw his guilty plea on the ground the prosecution breached the plea agreement. On April 27, 1999, the Wisconsin Supreme Court denied Tate's petition for review. (Ex. F.)

On April 26, 2000, Tate filed another post-conviction motion alleging, among other things, his post-conviction counsel was constitutionally ineffective for failing to allege his trial counsel was constitutionally ineffective for failing to file a pre-trial motion to suppress the fruits of an allegedly illegal search and arrest. In support of this motion, Tate submitted two affidavits which stated the officers who searched his home in February 1996 did not have his consent. Tate's affidavits were signed and dated August 1, 1997. Tate submitted no evidence along with the affidavits to show his trial counsel was actually aware of the claims in the affidavit at the time he could have filed a motion to suppress, but there was also no evidence in the record to indicate his trial counsel ever investigated the validity of the search or interviewed Tate on whether the policy report, which stated Tate gave his consent to search the home, was accurate. In May 2000, the

-8-

trial court denied the post-conviction motion without a hearing. The court explained there was no need for a hearing because there was no "reasonable probability" Tate could show the search and arrest were unlawful. Tate appealed.

On July 13, 2001, the Wisconsin Court of Appeals reversed the decision of the trial court and remanded the case for an evidentiary hearing. The court of appeals concluded the trial court could not know whether Tate could show the search and arrest were unlawful without first conducting a hearing:

> It is within the discretion of the trial court to deny a postconviction motion without an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief. However, if a defendant's postconviction motion alleges facts which, if true, would entitle him to relief, the trial court has no discretion and must hold an evidentiary hearing.
>
> . . . .
> . . . .
>
> The State also argues there is no evidence in the record that trial counsel was aware of the facts alleged in the two affidavits and notes that the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions . . . and on information supplied by the defendant. . . . . Even though the affidavits were not filed in this case until recently, it would be reasonable to assume, without evidence to the contrary, that Tate's trial counsel should have known that Tate might have disputed the policy report's account of the search.

(Ex. I, at 4 (citations and quotations omitted)).

On January 30, 2003, after conducting a hearing, the trial court denied Tate's motion for post-conviction relief a second time. The court concluded the

-9-

entry and search of Tate's home was indeed unlawful, and it concluded the mask and coat seized in the home would have been suppressed had a pre-trial motion been made to do so. However, the trial court concluded Tate did not suffer prejudice from the seizure of the coat and mask, and therefore, did not suffer prejudice from his counsel's failure to file a pre-trial motion to suppress the evidence, and therefore, did not receive ineffective assistance from his post-conviction counsel.[1] Tate appealed.

On July 19, 2003, Tate's post-conviction counsel at that time, Thomas Wilmouth, filed a brief in support of the appeal. After Wilmouth filed this brief, Tate filed his own document entitled "MOTION TO SUPPLEMENT COUNSEL BRIEF IN CHIEF ON APPEAL." One of the issues Tate sought to raise in his supplemental brief was whether his confession was one of the fruits of his unlawful arrest. The Wisconsin Court of Appeals denied the motion.

> Tate's motion will be denied. There is no provision in this court's rules for a *pro se* fling in this context. Tate has counsel in this matter, and the court need not and will not consider his supplemental *pro se* filings.

(Ex. K (citations omitted)).

---

[1] The trial court noted to the extent Tate claimed his trial counsel's failure to file a motion to suppress led to his confession, he failed to offer any explanation as to how this was the case. (Respondent's Br. Ex. 5, at 29.)

-10-

On March 2, 2004, the Wisconsin Court of Appeals affirmed the denial of Tate's post-conviction motion. At issue was whether Tate's trial counsel was constitutionally ineffective because he failed to bring a pre-trial motion to suppress the mask and coat and his confession (*i.e.*, the deficient performance), and whether but for that deficient performance, Tate would not have pleaded guilty and instead gone to trial (*i.e.*, the prejudice from the deficient performance). The court set forth the law governing Tate's claim:

> 'The withdrawal of a guilty plea is not a 'right' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion.' After sentencing, the defendant is required to show a 'manifest injustice' in order to be entitled to plea withdrawal. That showing must be by clear and convincing evidence, and the burden of proof is on the defendant. 'The 'manifest injustice' test is rooted in concepts of constitutional dimension, requiring the showing of a serious flaw in the fundamental integrity of the plea.

> The supreme court "has recognized that the 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." In *Hill v. Lockhart*, 474 U.S. 52 (1985), the United States Supreme Court concluded that 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668 (1984), in order to prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant was prejudiced as a result of this deficient conduct. To prove deficient performance, the defendant must identify specific acts or omissions of counsel that fall 'outside the wide range of professionally competent assistance. To show prejudice, the defendant must demonstrate that errors were so serious

-11-

that the result of the proceeding was unreliable. Thus, in order to show prejudice, the defendant seeking to withdraw his or her plea must allege facts to show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

(Ex. N, at 7-8 (certain citations and quotations omitted)).

Against this backdrop, the Wisconsin Court of Appeals concluded Tate could not show he suffered prejudice from his trial counsel's mistake. First, the court addressed Tate's claim that but for his counsel's failure to bring a pre-trial motion to suppress his confession, he would not have pleaded guilty. The court declined to consider the merits of this claim because it concluded Tate failed to adequately develop the issue in the trial court. The court also refused to remand the matter back to the trial court so this issue could be more fully developed:

Tate appears to contend that since his *pro se* Wis. Stat. § 974.06 motion included the claim that evidence, including *statements*, resulting from his unlawful arrest and the unlawful search should have been suppressed, and because this court's decision on remand "recognized that Tate sought suppression of his statements," he should be able to pursue that avenue here. Yet Tate also concedes that what has been lost in the analysis to date has been the potential suppression of his inculpatory statement to police. This argument–regarding the alleged significance of the connection between illegal search and Tate's confession–has not been adequately developed below, and the trial court did not address its merits. In fact, the trial court noted: 'Tate never explains what difference, if any, the discovery of the mask and the coat in his home made to his decision to confess, to testify against his own brother and to plead

-12-

guilty.' As such, we decline to consider it as a basis for Tate's claim of prejudice.

. . . .

. . . .

Tate requests that we "remand this matter to the trial court for an evidentiary hearing on the potential suppression of his inculpatory statement[,]" if we believe the resolution of [his] § 974.06 . . . motion is affected by a lack of a record concerning the propriety of the claim that his inculpatory statement could have been suppressed as fruit of any unlawful arrest and search[.]" We decline to do so. An evidentiary hearing regarding the illegal search has already been held, and the trial court found that Tate failed to properly develop this argument.

Tate also requests an evidentiary hearing on the prejudice prong of his ineffective assistance claim. He insists that the most recent evidentiary hearing was limited in scope, and that he candidly did not think to ask the trial court to allow him to present evidence on the prejudice issue. While we appreciate his candor, we cannot conclude that the trial court erred in failing to conduct an evidentiary hearing on the matter when it was never requested. Furthermore, the trial court ordered briefing on the prejudice aspect of the ineffective assistance claim–the issue was not ignored.

(Ex. N, at 6, 8-9 (citations and quotations omitted, emphasis in original)).

Second, the Wisconsin Court of Appeals addressed Tate's claim that but for his counsel's failure to bring a pre-trial motion to suppress the coat and mask, he would not have pleaded guilty. The court seemed to agree the mask and coat would have been suppressed had his trial counsel moved to suppress them, but it was not persuaded Tate would have gone to trial rather than pleaded guilty if the mask and coat were suppressed:

-13-

Assuming *arguendo* that Tate's trial counsel's performance was deficient, we are not persuaded that Tate was prejudiced as a result. Tate has failed to establish that there is a reasonable probability that, but for the failure to suppress the coat and mask, he would not have pled guilty. Tate confessed to his involvement in the crime, as did other co-defendants, and he has not, until now, developed an argument alleging any nexus between his confession and the discovery of the mask and coat. Indeed, the trial court also determined that 'when . . . Tate decided to plead guilty he was motivated mainly by his hope for leniency in exchange for cooperation against his brother.' He has not persuaded us otherwise.

(Ex. N, at 8.) Tate sought discretionary review of the decision of the Wisconsin Court of Appeals, and on August 2, 2004, the Wisconsin Supreme Court denied his petition for review. (Ex. O.)

On October 18, 2004, Tate filed a federal *habeas* petition with this court raising four grounds for relief. In Ground One, Tate alleges his constitutional rights were violated when the state breached the alleged plea agreement by not negotiating a sentence recommendation, and he contends his trial counsel's ineffective assistance facilitated this breach. In Ground Two, Tate claims because of his trial counsel's ineffective assistance, his guilty plea was not knowingly, voluntarily, and intelligently entered. In Ground Three, Tate claims his trial counsel's failure to file a pre-trial motion to suppress his confession prejudiced him because if his confession were suppressed, he would not have pleaded guilty. In Ground Four, Tate claims the Wisconsin courts violated his constitutional rights

-14-

by not permitting him to fully litigate his claim that his trial counsel's failure to file a motion to suppress his confession constituted ineffective assistance.

## DISCUSSION

The federal *habeas corpus* statute was amended effective April 26, 1996, by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 322 (1997) (AEDPA enacted on April 24, 1996). Applications for the writ filed after April 26, 1996, are governed by the AEDPA amendments. *Id.* at 336 (provisions of the AEDPA apply to *habeas* applications filed after the Act's effective date). Tate's application was filed after April 24, 1996, and his application is therefore governed by the AEDPA amendments.

The district court has the power to grant the writ of *habeas corpus* under 28 U.S.C. § 2241(a). *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."). In general, the district court shall not grant the writ unless one of the five conditions set forth in 28 U.S.C. § 2241(c) is satisfied. Section 2241(c) reads in its entirety:

> The writ of habeas corpus shall not extend to a prisoner unless–
> (1)   He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
> (2)   He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

-15-

(3)     He is in custody in violation of the Constitution or laws or treaties of the United States; or

(4)     He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claim under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend on the law of nations; or

(5)     It is necessary to bring him into court to testify or for trial.

*Id.*

When an application for the writ of *habeas corpus* is sought on behalf of a prisoner in custody pursuant to the judgment of a State court (*i.e.*, a "State prisoner"), the district court's power to grant the writ is more limited, however. Specifically, the district court shall not grant the writ when it is sought on behalf of a State prisoner unless it finds the following five requirements are satisfied:

(1)     the application is timely filed within the meaning of 28 U.S.C. § 2244(d)(1);

(2)     the State prisoner has fulfilled the exhaustion requirements set forth in 28 U.S.C. § 2254(b)(1);

(3)     the State prisoner has not procedurally defaulted his ground for relief, or if he has, the State prisoner is able to show cause and prejudice for the procedural default or that there will be a fundamental miscarriage of justice if his ground for relief is not adjudicated on the merits;

-16-

(4)     the State prisoner is "in custody in violation of the Constitution or laws or treaties of the United States" within the meaning of 28 U.S.C. § 2241(c)(3); and

(5)     the provisions in 28 U.S.C. § 2254(d) do not preclude the district court from granting the writ.

First, the district court shall not grant the writ unless the State prisoner's application was timely filed within the meaning of 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides in its entirety:

> A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.
> (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action;
> (C)     the date on which the constitutional right was asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D)     the date on which the factual predicate of the claim or claims was presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The one-year statute of limitations under § 2244(d)(1) is a non-jurisdictional affirmative defense. *See Nardi v. Stewart*, 354 F.3d 1134,

-17-

1140 (9th Cir. 2004); *Kiser v. Johnson*, 163 F.3d 326, 328 (5th Cir. 1999); *Robinson v. Johnson*, 313 F.3d 128, 134-37 (3d Cir. 2002). Because it is an affirmative defense, the respondent is required to raise it in his answer. *See* Fed. R. Civ. P. 8(c); *see also* Rules 5 and 11 of the Rules Governing Section 2254 Cases. If the respondent does not raise this defense in his answer, the defense will be deemed waived. *See, e.g., Nardi*, 354 F.3d at1141. The court will not raise the defense *sua sponte.*[2] In sum, if the respondent does not raise this defense in his answer, the court will conclude the State prisoner has satisfied the requirement that his application be timely filed within the meaning of § 2244(d)(1).

Here, the court concludes Tate has satisfied the requirement that his application be timely filed within the meaning of § 2244(d)(1). The respondent does not contend in his answer that Tate's petition is untimely, and the argument is therefore waived.

Second, the district court shall not grant the writ unless the State prisoner has fulfilled the exhaustion requirements set forth in 28 U.S.C. § 2254(b)(1). Section 2254(b)(1) provides in its entirety:

---

[2] The district court has the authority to raise the statute of limitations defense *sua sponte* when it conducts a preliminary review of the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases. However, once the respondent has filed an answer, the district court does not have the authority to cure the waiver of the statute of limitations defense under § 2244(d)(1). *See Scott v. Collins*, 286 F.3d 923, 930 (6th Cir. 2002).

-18-

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirements set forth in § 2254(b)(1) are non-jurisdictional affirmative defenses. *Granberry v. Greer*, 481 U.S. 129, 131 (1987) (referring to the exhaustion requirement as a "defense"). Pursuant to Rule 5 of the Rules Governing Section 2254 Cases, the respondent is required to raise this defense in his answer. *Id.* However, the respondent's failure to raise this defense in his answer does not result in a waiver of the defense. *See* 28 U.S.C. § 2254(b)(3). Section 2254(b)(3) expressly provides that the "State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). If the State expressly waives the exhaustion requirement, the district court still has the power to raise the defense *sua sponte* when it believes doing so best serves the interests of comity and federalism. *See Granberry*, 481 U.S. at 134-35. In sum, if the State expressly waives the exhaustion defense, and the court, in the exercise of its discretion,

-19-

declines to raise the defense *sua sponte*, it will conclude the State prisoner has fulfilled the exhaustion requirements set forth in § 2254(b)(1).

Here, the court concludes Tate has fulfilled the exhaustion requirements set forth in § 2254(b)(1). The respondent expressly waives the defense in his answer, and the court, after reviewing the record, does not believe the interests of comity and federalism require it to raise the defense *sua sponte*.

Third, the district court shall not grant the writ unless the State prisoner has not procedurally defaulted his claim, or if he has, is able to show cause and prejudice for the procedural default or that there will be a fundamental miscarriage of justice if his claim is not adjudicated on the merits. *See Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000). A State prisoner procedurally defaults his claim when he does not give the State courts a full and fair opportunity to address the merits of his claim and correct any errors of constitutional magnitude. *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)).

A state prisoner may also procedurally default a constitutional claim in a federal *habeas* petition by failing to raise the claim in a manner prescribed by state procedural laws. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002); *Thomas*, 201 F.3d at 1000. If the state court's decision to decline to address the merits of

a state prisoner's constitutional claim was based on an independent and adequate state procedural ground, the district court is generally barred from reviewing the claim in a federal *habeas* petition. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Whether the state court's procedural ground is independent is a question of state law; whether it is adequate is a question of federal law. *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). A state's procedural ground is independent if the last state court to consider the question "clearly and expressly" relied on the procedural default as the basis for its decision to decline to address the merits of the constitutional claim. *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000). When a lower state court declines to address the constitutional claim on procedural grounds, silence from the state's highest court in its decision to deny discretionary review does not undercut the lower court's basis. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990). A state's procedural ground is adequate if the procedural rule is "firmly established and regularly followed" and applied in a principled manner. *Braun*, 227 F.3d at 912 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (other quotations omitted)). In addition, the petitioner must "fairly be deemed to have been apprised of [the rule's] existence" at the time they acted for the state procedural grounds to be adequate. *Id.* (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958)).

In the event a federal *habeas* petition contains a constitutional claim which was procedurally defaulted for any reason, the district court may still review the claim, but only if the state prisoner can demonstrate adequate cause for his failure to raise the claim and actual prejudice as a result of the default, or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Thomas v. McCaughtry*, 201 F.3d 995, 999 (7th Cir. 2000).

The procedural default rule is a non-jurisdictional affirmative defense. *Trest v. Cain*, 522 U.S. 87, 89 (1997). As such, the respondent is required to raise the defense in his answer. *See* Fed. R. Civ. P. 8(c); *see also* Rules 5 and 11 of the Rules Governing Section 2254 Cases. If the respondent fails to raise the defense in his answer, the defense is waived. *Cossel v. Miller*, 229 F.3d 649, 653 (7th Cir. 2000). Even if the respondent waives the defense by failing to raise it in his answer, the court may still raise it *sua sponte* when it believes doing so serves the interests of comity and federalism. *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998). The respondent may also expressly waive the defense. *See Henderson v. Thieret*, 859 F.2d 492, 498 (7th Cir. 1988). When the respondent expressly waives the defense, the court may not raise it *sua sponte*. *Id.* (stating district court may not override respondent's purposeful decision to forego procedural default defense). In sum, if the respondent fails to raise the procedural default defense in his answer

and the court, in the exercise of its discretion, does not raise the defense *sua sponte*, or if the respondent expressly foregoes the defense, the court will find the State prisoner has not procedurally defaulted his ground for relief.

Here, the respondent contends Tate procedurally defaulted his First and Third Grounds for relief, and the court is obliged to agree. Tate procedurally defaulted the issue raised in Ground One by failing to present it to the Wisconsin Supreme Court for a ruling on the merits. Tate procedurally defaulted the issue raised in Ground Three by failing to properly develop the issue in the trial court. The Wisconsin Court of Appeals refused to address this issue on an independent State ground. In addition, the ground was adequate and should have been known by Tate. *See, e.g., Justmann v. Portage County*, 692 N.W.2d 273, 278 (Wis. Ct. App. 2004); *Kimberly S.S. v. Sebastian X.L.*, 2005 WI App. 83, P12.

Tate also fails to show cause and prejudice for the procedural defaults or that a fundamental miscarriage of justice will occur if these grounds for relief are not addressed by this court. Tate is to blame for failing to raise the issue raised in Ground One to the Wisconsin Supreme Court. After Goldstein filed the no-merit brief in accordance, it was Tate's responsibility to make sure his constitutional claims were presented to the Court for a ruling on the merits. It was also Tate's responsibility to make sure his constitutional claims were properly

-23-

developed in the trial court during his post-conviction proceeding because he was acting as his own counsel in that proceeding. Finally, Tate cannot possibly show he is actually innocent of armed robbery–concealing identity–and party to a crime; after all, he confessed to these crimes under oath. As such, the court is barred from addressing the merits of these grounds for relief.

Fourth, the district court shall not grant the writ unless the State prisoner is in custody in violation of federal law within the meaning of § 2241(c)(3). Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(a) states in relevant part:

> . . . . [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Stated differently, when the application for the writ is filed on behalf of a State prisoner, the district court may only grant the writ when the conditions set forth in § 2241(c)(3) are satisfied.

The conditions set forth in § 2241(c)(3) are satisfied when the district court concludes there has been a violation of federal law *and* that the violation played

-24-

a causal role in the State prisoner's custody. *See Aleman v. Sternes,* 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2241(c)(3) are satisfied, it accepts as true all reasonable findings of fact by the State courts. *Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001). It considers all questions of law and mixed questions of law and fact *de novo.* *State ex rel. Robinson v. Buchler*, 936 F. Supp. 590, 595 (E.D. Wis. 1996).

If the court concludes there has been a violation of federal law, it must determine whether the violation played a causal role in the State prisoner's custody. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *O'Neil v. McAninch*, 513 U.S. 432, 444-45 (1995); *Aleman*, 320 F.3d at 690. If the respondent makes no attempt to show a violation of federal law has not played a causal role in the State prisoner's custody, he will have waived his right to do so. *See Jenkins v. Nelson*, 157 F.3d 485, 494 n.1 (7th Cir. 1998). Even if the respondent waives his right to do so, the district court may, in the exercise of its discretion, consider *sua sponte* whether the evidence shows this. *Id.*

In Ground Four, Tate contends he is in custody in violation of the Constitution because the Wisconsin courts unconstitutionally deprived him of the right to fully raise and litigate his claim that his trial counsel's failure to file a motion to suppress his confession constituted ineffective assistance. This court

cannot agree. A claimed error in a state collateral proceeding cannot form the basis of federal *habeas* relief unless the collateral review itself violated some independent constitutional right. *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (there is no constitutional right to any state collateral review). Here, Tate fails to show the Wisconsin Court of Appeals' refusal to review the merits of this claim or remand the matter to the trial court for further development violated an independent constitutional right. As such, Tate fails to show he is in custody in violation of the Constitution for this reason.

Finally, Tate fails to show he is entitled to relief on Ground Two because § 2254(d) precludes the court from granting the writ of *habeas corpus* for this ground. Section 2254(d) reads in its entirety:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

-26-

A State prisoner's claim was "adjudicated on the merits in State court proceedings" within the meaning of § 2254(d) when the State court resolved the claim on substantive grounds, regardless of the reasoning process used to resolve the claim. *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003); *Hough v. Anderson*, 272 F.3d 878, 898 n.7 (7th Cir. 2001); *see also Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). There is no adjudication "on the merits" within the meaning of § 2254(d), however, if the State court disposed of the petitioner's claim on procedural grounds. *Braun v. Powell*, 227 F.3d 908, 916 (7th Cir. 2000); *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997). In addition, there is no adjudication "on the merits" if the State court never addressed the petitioner's claim. *Dye v. Frank*, 355 F.3d 1102, 1107 (7th Cir. 2004) (citing *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998)); *Ouska*, 246 F.3d at 1046.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" within the meaning of § 2254(d)(1) refers to a rule of law that was clearly established at the time the petitioner's State court conviction became final. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 390 *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (the phrase "clearly established Federal law" means the governing "legal principle" or "principles" set forth by the Supreme Court at the time the State court renders its decision.); *Yancey v. Gilmore*, 113 F.3d 104, 106 (7th Cir.

1997) (As the plain language of § 2254(d)(1), it refers to law as determined by the Supreme Court of the United States, not the U.S. Courts of Appeals or district courts).   Only "the holdings, as opposed to the dicta," of the Supreme Court's decisions qualify as "clearly established Federal law" within the meaning of § 2254(d)(1). *Searcy v. Jaimet*, 332 F.3d 1081, 1087-88 (7th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).

A State court decision is "contrary to" clearly established Supreme Court precedent within the meaning of § 2254(d)(1) when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on the question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams*, 529 U.S. 362 (2000); *Anderson v. Cowan*, 227 F.3d 893, 896 (7th Cir. 2000).   The mere fact that the State court decision uses "shorthand" reference or is a bit imprecise about the legal standard set forth by the Supreme Court does not automatically render it "contrary to" Supreme Court law within the meaning of § 2254(d)(1). *Viciotti*, 537 U.S. 19, 23 (2002).   The district court presumes the State court knows and follows federal law, and it will not be quick to conclude that the State court applied an inconsistent standard. *Woodford v. Viciotti*, 527 U.S. 19, 23 (2002).   In fact, the State court does not even need to be aware of

-28-

Supreme Court precedents so long as the reasoning and the result of the decision are not contrary to them. *Early v. Packer*, 537 U.S. 3, 8 (2002). Whether the State court's decision was "contrary to" Supreme Court precedent is a legal determination. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

The provisions set forth in § 2254(d) are non-jurisdictional and are akin to affirmative defenses in that they may be waived. *See Watkins v. Meloy*, 95 F.3d 4, 6 (7th Cir. 1996) ("The provisions of the [AEDPA] governing the scope of federal judicial review do not affect the subject matter jurisdiction of the federal courts, and are therefore waivable."); *see also Emerson v. Gramely*, 92 F.3d 898, 900 (7th Cir. 1996) (issue of whether § 2254(d) precludes relief is waived when State does not ask court of appeals to consider the matter); *Mason v. Hanks*, 97 F.3d 887, 892 n.1 (7th Cir. 1996). If the respondent waives this defense, the court will not raise it *sua sponte*.

Here, the respondent raises the § 2254(d) defense in his answer, and the decisions by the Wisconsin Court of Appeals dated February 9, 1999, and March 2, 2004, adjudicated the merits of Tate's claims that his guilty plea was not knowingly, voluntarily, and intelligently entered. Suffice it to say, this court cannot conclude the court of appeals' decisions in this regard were contrary to any clearly established precedent of the Supreme Court or involved an unreasonable

-29-

application of such precedent or unreasonable determination of the facts in light of the evidence presented in State court.  As such, Tate fails to show § 2254(d) does not preclude this court from issuing the writ of *habeas corpus* in this case.[3]

Accordingly,

IT IS ORDERED that Tate's petition for the writ of *habeas corpus* (Docket #1)be and the same is hereby DENIED;

IT IS FURTHER ORDERED that Tate's motion for leave to file a reply brief (Docket #25) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this   26th   day of July, 2005.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge

---

[3] The court has reviewed Tate's motion for leave to file a reply brief.  The motion will be denied because the court is satisfied the arguments and record in this case are sufficiently developed.

-30-